**Thomas J. HIRT, Plaintiff,**

v.

**UM LEASING CORP., et al.,
Defendants.**

**No. CV 84–0–222.**

United States District Court,
D. Nebraska.

Aug. 1, 1985.

---

Wm. E. Morrow, Gary L. Hoffman, Thomas J. Culhane, Erickson & Sederstrom, P.C., Omaha, Neb., for plaintiffs.

James E. Lang, Omaha, Neb., and Michael R. Law, Phoenix, Ariz., for defendants Leon A. Ross and Heritage Sound Recording Distributors.

William G. Dittrick, Omaha, Neb., for defendants Banyan Products and Jack Milliman.

Thomasina M. Reed, pro se.

BEAM, District Judge.

This matter is before the Court upon the motion of defendants Leon Ross and Heritage Sound Recording Distributors (HSRD) to dismiss the complaint (filing 10). Specifically, defendants seek dismissal for lack of personal jurisdiction, *Fed.R.Civ.P.* 12(b)(2); for failure to state a claim upon which relief may be granted, *Fed.R.Civ.P.* 12(b)(6); and for failure to set forth allegations of fraud with sufficient particularity, *Fed.R.Civ.P.* 9(b).

In this action, plaintiff seeks damages from six individual defendants and four corporate defendants in connection with alleged securities fraud, RICO violations and breach of contract. As against defendants Ross and HSRD, the complaint alleges conspiracy to commit violations of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10B–5 promulgated thereunder, the Racketeer Influenced and Corrupt Organization Act (RICO—18 U.S.C. § 1962(d)), and the Securities Act of Nebraska (*Neb.Rev.Stat.* § 8–1102(1)).

## I. BACKGROUND

The alleged facts are as follows. On December 21, 1980, plaintiff entered into a lease agreement with defendant UM Leasing Corporation (UML), a New York corporation, whereby plaintiff agreed to lease a master sound recording (Master), entitled "Merle Travis UDL 2366," from UML. Pursuant to this lease agreement, plaintiff was granted the right to manufacture, produce and distribute sound recordings from the Master. Plaintiff claims that he entered into the lease in reliance upon written representations by UML that UML had clear and unencumbered title to the Master, and that the lease would entitle plaintiff, as lessee, to certain income tax benefits.

Contemporaneous with entering this lease with UML, plaintiff also entered into an agreement with defendant United Distributors, Ltd. (UDL), whereby plaintiff tendered $3,500.00 for the production, promotion, distribution and maintenance of sound recordings from the Master. UDL, which has its principle business office in Phoenix, Arizona, was recommended to plaintiff by UML. Plaintiff and UDL executed a service contract on February 27, 1981. Sometime thereafter, UDL apprised plaintiff that it could not produce, promote or distribute any sound recordings derived from the Master until it received proof of title to the Master from UML. Despite receipt of copies of written representations from UML that it had title to the Master, UDL continued not to perform. As a result, plaintiff terminated his contract with UDL on February 19, 1982.

On March 25, 1982, plaintiff engaged defendant Leon Ross, sole proprietor of de-

fendant HSRD and ex-employee of UDL,[1] to assume the responsibilities of UDL. Plaintiff subsequently paid Ross $758.00 for certain production costs. Seventeen months later, on August 22, 1983, Ross sent plaintiff a letter demanding proof of title with respect to the Master and stating that he and defendant HSRD were precluded from marketing any recordings until such proof of title was furnished. Thereafter, on November 1, 1983, Ross advised plaintiff by letter that, per a telephone conversation between he and UML, UML did not have proof of legal title to the Master. Based on this information, Ross informed plaintiff that he and HSRD would not distribute or market any of the recordings which had been produced from the Master.

On or about November 9, 1983, plaintiff received notice from the Internal Revenue Service (IRS) that it was denying plaintiff all of the tax benefits he had claimed in connection with the lease of the Master for the 1980 and 1981 tax years. The IRS accordingly assessed plaintiff with deficiencies totaling approximately $53,000.00 and penalties of approximately $2,650.00.

Upon subsequent investigation, plaintiff discovered that UML had made numerous misrepresentations to him in connection with the lease. This action was subsequently filed on April 16, 1984.

## II.

With regard to defendants' claim that this Court lacks personal jurisdiction under *Fed.R.Civ.P.* 12(b)(2), defendants argue that plaintiff has failed to establish sufficient minimum contacts with the State of Nebraska.

To determine whether the Court has personal jurisdiction over defendants, the Court looks to the relevant federal statutes. 15 U.S.C. § 78aa provides:

> Any suit or action to enforce any liability or duty created by this chapter [the Security Exchange Act] or rules and regu-

lations thereunder ... may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or where ever the defendant may be found.

18 U.S.C. § 1965 provides:

> (a) Any civil action or proceeding under this chapter [the Racketeer Influenced and Corrupt Organization Act] against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

> \* \* \* \* \* \*

> (d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

Sections 78aa and 1965 provide for nation-wide service of process, *see Fitzsimmons v. Barton*, 589 F.2d 330, 332–34 (7th Cir.1979); *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974); *Hodgdon v. Needham-Skyles Oil Co.*, 556 F.Supp. 75, 77 (D.D.C.1982), and it is well established that the "minimal contacts" theory proposed by defendants is not relevant where a federal statute provides for nation-wide service of process. *See Haile v. Henderson National Bank*, 657 F.2d 816, 824 (6th Cir.1981); *Mariash*, 496 F.2d at 1143; *Hodgdon*, 556 F.Supp. at 77. Pursuant to sections 78aa and 1965, the Court's jurisdiction ·is coextensive with the boundaries of the United States and "due process requires only that a defendant in a federal [question] suit have minimum contacts with the United States, 'the sovereign that has created the court.'" *F.T.C. v. Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir.1981), *quoting Stafford v. Briggs*, 444 U.S. 527, 554, 100 S.Ct.

---

**1.** Defendant Ross apparently was employed by UDL during the period in which UDL was under contract by plaintiff, and he allegedly took part in telephone conversations with plaintiff regarding UDL's insistence on proof of title to the Master.

774, 789, 63 L.Ed.2d 1 (1980) (Stewart, J., dissenting); *Clement v. Pehar*, 575 F.Supp. 436, 438–39 (N.D.Ga.1983).

Defendants, being residents of Arizona and having been served process there, necessarily had sufficient contacts with the United States to satisfy the requirements of due process in this instance, and thus the Court has personal jurisdiction over them under sections 78aa and 1965.

The Court now briefly turns to defendants' claim that, even assuming the Court has personal jurisdiction with respect to the federal claims, the Court does not have personal jurisdiction with respect to plaintiff's pendent state claims. The Court finds no merit in defendants' argument. Once the Court finds that it has personal jurisdiction over defendants with respect to certain federal claims, and further finds that the state claims are pendent in nature, i.e., that they arise from the same set of operative facts as the federal claims, then the Court necessarily has personal jurisdiction over such pendent state claims, if the Court so chooses to exercise pendent jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In this instance, both federal and state claims arise from the same set of operative facts. In the interest of judicial economy the Court concludes that it will exercise pendent jurisdiction over the state claims and that it has personal jurisdiction over defendant with respect to such claims.

### III. FAILURE TO STATE A CLAIM

The Court will now address defendants' claim that the complaint should be dismissed for failure to state a claim upon which relief may be granted.

#### A. 10(b) and 10b–5 Claims

Plaintiff's first claim for relief against defendants Ross and HSRD alleges that they conspired with defendants UML, William B. Medina (President of UML) and Pete Bennett (special consultant to UML) to commit violations of 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 (17 C.F.R. § 240.-10b–5). Defendants Ross and HSRD argue that plaintiff's complaint should be dismissed under *Fed.R.Civ.P.* 12(b)(6) because it fails to allege (1) that they made any material misrepresentations to plaintiff, (2) that they had any intent to deceive or defraud plaintiff, (3) that they used any manipulative or deceptive device in connection with the purchase or sale of the lease, or (4) that plaintiff suffered any damages in reliance upon representations or omissions that they made.

It is well established that a complaint alleging conspiracy to violate securities laws must plead the following elements: (a) an agreement to accomplish a wrongful act, i.e., a securities violation; and (b) an act in furtherance of the conspiracy. *Rose v. Arkansas Valley Environmental & Utility Authority*, 562 F.Supp. 1180, 1200 (W.D.Mo.1983); *Gilbert v. Bagley*, 492 F.Supp. 714, 727 (M.D.N.C.1980). Furthermore, where the defendant's alleged participation is not sufficient to subject him to independent "primary" liability, there must be other allegations properly pleading a "primary" violation by another or others, as well as allegations of scienter on the part of the defendant. *Rose*, 562 F.Supp. at 1200. The complaint must also be sufficiently specific to allow the defendant to identify the conspiracy of which he is alleged to be a part. *Id.* at 1203.

> [I]t is often said with respect to conspiracy pleading that a mere conclusory allegation that a conspiracy has taken place will not suffice and, variously, at least where possible, that enough facts should be alleged to support an inference of the necessary conspiratorial agreement to show overt acts which are reasonably related to promotion of the claimed conspiracy and to show the time frame and effect of the conspiracy.

*Rose*, 562 F.Supp. at 1204 (citations omitted). The Court must also bear in mind the usual rules for testing the sufficiency of a complaint: that all well-pleaded averments will be taken as true, *Loge v. United States*, 662 F.2d 1268, 1270 (8th Cir.1981);

that the complaint will be liberally construed in the light most favorable to the plaintiff, *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982); that all doubts will be resolved in favor of the sufficiency of the complaint, *Mandel v. Erickstad*, 648 F.2d 1175, 1177 (8th Cir.1981); and that the complaint will not be dismissed unless it appears beyond all doubt that plaintiff can prove no set of facts thereunder which would entitle him to relief, *Price v. Moody*, 677 F.2d 676, 677 (8th Cir.1982).

■ With these principles in mind, the Court considers the defendants' questions concerning the sufficiency of the complaint. In this Court's view, defendants' claim that the complaint fails to allege material misrepresentations, intent to defraud, and use of any manipulative or deceptive device on the part of defendants Ross and HSRD overlooks the very nature of conspiracy.

> In order for a defendant to be liable in a 10b–5 case, it is not necessary that he personally and directly perpetrate the fraud ... [L]iability may also be imposed, under theories of so-called "secondary" liability, upon persons who aid and abet a securities violation, or who conspire to its commission.

*Rose*, 562 F.Supp. at 1199–1200.

As against Ross and HSRD only conspiracy, a form of "secondary" liability, is alleged, and thus acts which would traditionally establish a "primary" violation need not be alleged against them. In this instance, paragraph 23 of the complaint sufficiently alleges that a conspiratorial agreement existed between defendants Ross and HSRD and defendants UML, Medina and Bennett. Specifically, it alleges that under the agreement defendants UML, Medina and Bennett would lure prospective investors, such as plaintiff, into the leasing program; that UML would then refer the investor to a service company, such as UDL, for the production and distribution of derivative recordings; that after having received certain fees, UDL would demand proof of legal title and refuse to take action until such proof was provided; that UML would respond by making claim of

good title but would give no further evidence of title; and that when the investor was faced with such an impasse, Ross and HSRD would offer to take over the project, would collect certain fees, and then repeat the process of demanding proof of title and refusing to perform until such proof was provided. The Court finds that such allegations sufficiently plead an inference of the necessary conspiratorial agreement and acts in furtherance of the conspiracy. The Court further finds that the complaint sufficiently pleads a "primary" violation by others, i.e., defendants UML, Medina and Bennett. *See Rose*, 562 F.Supp. at 1199. The necessary pleading requirements having been met, defendants' motion to dismiss the federal securities fraud claims will be denied.

**B. State Securities Fraud Claims**

Plaintiff's second claim for relief alleges that defendants Ross and HSRD conspired to violate section 8–1102(1) of the Nebraska Revised Statutes. Section 8–1102(1) is the state's counterpart to federal securities Rule 10b–5, and it prohibits the same fraudulent acts.

In support of their motion to dismiss the state securities claims for failure to state a claim, defendants Ross and HSRD reassert the same arguments they made against the federal securities claims. The Court rejects these arguments for the same reasons set forth above. Accordingly, defendants' motion to dismiss this portion of the complaint will also be denied.

**C. Common Law Fraud Claim**

Plaintiff's third claim for relief alleges that defendants Ross and HSRD conspired to commit fraud upon plaintiff at common law. Again, defendants reassert the same arguments they made with respect to the federal and state securities claims, i.e., that the complaint fails to make allegations of misrepresentation or omission by defendants Ross and HSRD. These arguments lack merit under a theory of conspiracy. Therefore, defendants' motion to dismiss this portion of the complaint will also be denied.

## D. RICO Claim

Plaintiff's sixth claim for relief essentially alleges that defendants Ross and HSRD *conspired* with defendants Bennett, Medina and UML to violate 18 U.S.C. § 1962(b), in violation of 18 U.S.C. § 1962(d). Section 1962(d) provides in its entirety: "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

 Defendants Ross and HSRD argue that the complaint should be dismissed for failure to state a claim, *Fed.R.Civ.P.* 12(b)(6).

> In order to properly allege a conspiracy under section 1962(d), the plaintiff must assert that *each* defendant has by his words or actions ... objectively manifested an agreement to participate directly or indirectly, in the affairs of an enterprise through *the commission of two or more predicate crimes.*

*Chambers Development Co. v. Browning—Ferris Industries,* 590 F.Supp. 1528, 1538 (W.D.Penn.1984) (quoting *United States v. Elliott,* 571 F.2d 880, 903 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978) (emphasis original)). Furthermore, the plaintiff must allege injury in his business or property stemming from the "conspiracy." *See Bache Halsey Stuart Shields v. Tracy Collins Bank,* 558 F.Supp. 1042, 1047 (D.Utah 1983); 18 U.S.C. § 1964(c). An allegation of a "racketeering injury" separate and apart from the harm from the predicate acts is not required. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* —— U.S. ——, ——, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). "If the defendant engages in a pattern of racketeering activity [i.e., the commission of two or more predicate crimes] in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c)." *Id.*

 Under the facts as alleged, the Court finds that the complaint sufficiently alleges conspiracy under 18 U.S.C. § 1962(d). Accordingly, defendants' motion to dismiss for failure to state a claim will be denied.

## IV. FAILURE TO PLEAD FRAUD WITH PARTICULARITY

 With respect to defendants' claim that the complaint fails to allege fraud with particularity, *Fed.R.Civ.P.* 9(b) does provide that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." However, this directive must also be considered in the context of Rule 8, which advocates a "short and plain statement of the claim" and averments which "shall be simple, concise, and direct." In addition, "there appears to be a tendency to allow greater leniency where the issues are complex, or the transactions cover a long period of time." 2A J. Moore's Federal Practice, ¶ 9.093 at 9–28 (1979).

Paragraphs 15, 16, 17, 23 and 38 of the complaint list specific acts alleged to have been committed by defendants Ross and HSRD. These allegations comprise plaintiff's claims of fraudulent activity and comply with the directives of Rules 8 and 9. Defendants are adequately placed on notice of the claims made against them and, therefore, may either admit or deny their participation in such activities. Accordingly, the Court finds no merit to defendants' motion in this regard.

Based upon the foregoing discussion,

IT IS ORDERED that defendants' motion to dismiss (filing 10) should be and hereby is denied; and

IT IS FURTHER ORDERED that defendants shall file and serve their answer to the complaint within twenty (20) days from the date of this Order.