# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |  |
|---|---|---|---|
| MARCO AGUILAR, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 17-728 (RC) |
| | : | | |
| v. | : | Re Document No.: | 5 |
| | : | | |
| MICHAEL & SON SERVICES, INC., | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**GRANTING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER THIS MATTER TO THE EASTERN DISTRICT OF VIRGINIA**

## I. INTRODUCTION

Plaintiff Marco Aguilar, individually and on behalf of others similarly situated, filed this action against his former employer, Michael & Son Services, Inc. ("M&S"), seeking unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). M&S moves to dismiss for improper venue or, alternatively, to transfer to the Eastern District of Virginia, Norfolk Division. Mr. Aguilar argues that venue is proper in this District, but proposes that if this Court finds otherwise, it should transfer this case to the Eastern District of Virginia, Alexandria Division. Finding that considerations of convenience and justice favor transfer to the Eastern District of Virginia, Norfolk Division, this Court grants M&S's alternative motion to transfer.

## II. BACKGROUND

M&S—which is organized under Virginia law and headquartered in Alexandria, Virginia—provides home improvement and repair services in Virginia, Maryland, and the

District of Columbia. Compl. ¶ 11, 13, ECF No. 1; Def.'s Mem. Supp. Mot. Dismiss ("M&S Mem.") at 2, ECF No. 5-1. Although it advertises to the "DC Metro Area" and has a District of Columbia home improvement contractor license, M&S asserts that it conducts only approximately 6–7% of its business in the District of Columbia. *See* Compl. ¶ 4, 53, 62; M&S Mem. at 2; Schlekau Aff. ¶ 6, ECF No. 5-2.

In October 2016, M&S hired Mr. Aguilar—a resident of Yorktown, Virginia—as a heating, ventilation, and air conditioning ("HVAC") technician. *See* Compl. ¶ 2; M&S Mem. at 2–3. Mr. Aguilar worked in this capacity out of M&S's Norfolk, Virginia office until his resignation in March 2017. M&S Mem. at 2. As part of his duties, he traveled to customers' homes in a company vehicle to perform services and repairs. *Id*. During his tenure with M&S, he serviced seventy-seven customers, all of whom were reportedly assigned to him by supervisors and managers from M&S's Norfolk office. *Id*. GPS records purportedly show that Mr. Aguilar never worked outside of the area surrounding Norfolk, Virginia. *See id*.; Schlekau Aff. ¶ 17. Additionally, according to M&S, Mr. Aguilar's supervisors and the records pertaining to his work history at M&S are all located in the Norfolk office. M&S Mem. at 3. Decisions regarding payment of M&S employees, however, are made and processed in Alexandria, Virginia. *See* Pl.'s Resp. Mot. Dismiss at 4, ECF No. 8.

Mr. Aguilar alleges that he and other HVAC technicians sometimes worked more than forty hours per week and that, per company policy, M&S did not compensate them for this overtime work. Compl. ¶ 24–26. Mr. Aguilar commenced this action against M&S, seeking unpaid overtime under the FLSA. *See* Compl. ¶ 26. Presently before the Court is M&S's motion to dismiss for improper venue or, in the alternative, to transfer this case to the Eastern District of Virginia, Norfolk Division. *See* Def.'s Mot. Dismiss, ECF No. 5.

## III. LEGAL STANDARD

### A. Motion to Dismiss for Improper Venue

Federal Rule of Civil Procedure 12(b)(3) instructs a district court to dismiss or transfer a case when venue is improper. Fed. R. Civ. P. 12(b)(3); *see also* 28 U.S.C. §1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). Venue is proper in a district where (1) a defendant resides, if all defendants are residents of the State in which the district is located; (2) a substantial part of the events giving rise to the claim occurred; or (3) if there is no district in which the action may otherwise be brought, wherever the defendants are subject to personal jurisdiction. 28 U.S.C. §1391(b). Generally, a defendant corporation is deemed a resident of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* §1391(c)(2). *But see id.* §1391(d) (specifying district rules for residency of corporations in States with multiple districts).

"To prevail on a motion to dismiss for improper venue, . . . 'the defendant must present facts that will defeat the plaintiff's assertion of venue.'" *Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 129 (D.D.C. 2013) (quoting *Slaby v. Holder*, 901 F. Supp. 2d 129, 132 (D.D.C. 2012)). The burden, however, remains on the plaintiff to prove that venue is proper when an objection is raised, since "it is the plaintiff's obligation to institute the action in a permissible forum." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011). In determining whether venue is proper, courts must accept the plaintiff's well-pled allegations as true, resolve any factual conflicts in the plaintiff's favor, and draw all reasonable inferences in favor of the plaintiff. *Hunter v. Johanns*, 517 F. Supp. 2d 340, 343 (D.D.C. 2007). However, "the court need

not accept the plaintiff's legal conclusions as true." *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 277 (D.D.C. 2002).

## B. Motion to Transfer Pursuant to § 1404(a)

Under 28 U.S.C. §1404(a), any civil action may be transferred to another district or division "[f]or the convenience of parties and witnesses, in the interest of justice." §1404(a). Unlike Rule 12(b)(3) and §1406(a), which contemplate dismissal or transfer when venue is improper, "§1404(a) does not condition transfer on the initial forum's being 'wrong.'" *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013). Instead, §1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). If the district court finds transfer merited, it may send the case to any district or division "where venue is also proper (*i.e.,* 'where [the case] might have been brought') or to any other district to which the parties have agreed." *Atl. Marine Constr. Co.*, 134 S. Ct. at 579 (alteration in original) (quoting 28 U.S.C. § 1404(a)). The burden is on the moving party to establish that transfer is proper. *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978).

Resolving a motion for transfer under §1404(a) involves a two-step process. First, the movant must show that the proposed transferee district is one where the plaintiff originally could have brought the case. *See Ctr. for Envtl. Sci. v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 356 (D.D.C. 2014). That is, a district where subject matter jurisdiction, personal jurisdiction, and venue are proper. *See Dean v. Eli Lilly & Co.*, 515 F. Supp. 2d 18, 21 (D.D.C. 2007). Second, the movant must show that "considerations of convenience and the interest of justice weigh in

favor of transfer." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 65 (D.D.C. 2003). This inquiry into whether considerations of convenience and the interest of justice weigh in favor of transfer "'calls on the district court to weigh in the balance a number of case-specific factors,' related to both the public and private interests at stake." *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 31 (D.D.C. 2013) (quoting *Stewart Org.,* 487 U.S. at 29).

## IV. ANALYSIS

M&S moves to dismiss Mr. Aguilar's complaint for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. M&S Mem. at 3. In the alternative, M&S requests that the Court transfer this case to the Eastern District of Virginia, Norfolk Division. *Id.* Mr. Aguilar argues that venue is proper in this District, but proposes that if this Court finds otherwise, it should transfer this case to the Eastern District of Virginia, Alexandria Division. Pl.'s Opp. Mot. Dismiss at 4.

### A. Motion to Dismiss for Improper Venue

Focusing on the second of three alterative tests for venue, M&S first argues that venue is improper under 28 U.S.C. §1391(a)(2) because Mr. Aguilar has not asserted facts to suggest that a substantial part of the events or omissions giving rise to his claim occurred in the District of Columbia. M&S Mem. at 4–6. The Court agrees that venue is improper under this subsection. Mr. Aguilar's claim stems from overtime work that he performed while employed by M&S. He does not allege that any of this work took place in the District of Columbia. Nor does he dispute M&S's contentions that all of his tasks were assigned by supervisors from M&S's Norfolk office and that he never left the Norfolk, Virginia region while providing services for M&S. Mr. Aguilar's assertions that M&S advertises and conducts some of its business in the District of Columbia are not sufficiently material to whether a substantial part of the events giving rise to

this particular claim occurred in the District. *See Caluyo v. DaVita, Inc.*, 938 F. Supp. 2d 67, 71 (D.D.C. 2013) (finding that owning several dialysis centers in the District of Columbia and advertising online to District of Columbia residents did not constitute a substantial part of the events giving rise to a claim of negligence that arose from events at a dialysis center in Arlington, Virginia). The second basis for venue under §1391 is therefore inapplicable. *See Fam v. Bank of Am. NA (USA)*, 236 F. Supp. 3d 397, 406 (D.D.C. 2017) (finding the second basis for venue inapplicable in a home foreclosure case initially brought in the District of Columbia because connections to that forum were minor while "the property in question [was] located in Virginia, the loan rescission was recorded in Virginia, and cancelled foreclosure sales of the plaintiff's home [had] been in Virginia").

But the Court's inquiry does not end there. Section 1391(a)(1) provides that venue is proper in "a judicial district in which any defendant resides." The provision further specifies that in a single-district State—like this judicial district—a defendant corporation resides where the corporation "is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. §1391(c)(2). M&S has not raised any affirmative objections to personal jurisdiction, and thus there is no basis for this Court to conclude that M&S does not reside in the District of Columbia for venue purposes. *Cf. Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 21 (D.D.C. 2008) (rejecting a defendant corporation's motion to dismiss for improper venue because the corporation had failed to affirmatively object to personal jurisdiction and thus did not meet its burden of showing that it did not reside in the District of Columbia). *But see DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 19 (D.D.C. 2002) (finding that failure

to contest personal jurisdiction does not mean that venue is conceded).[1]  Accordingly, M&S has not met its burden of showing that venue is improper under 28 U.S.C. §1391(a)(1).

## B. Motion to Transfer Pursuant to § 1404(a)

The Court next considers whether, even though M&S has not shown that venue is improper in this judicial district, transfer is nonetheless warranted pursuant to §1404(a).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. §1404(a).  After evaluating whether the transferee district is one in which the action could have originally been brought, the Court must then "'weigh in the balance a number of case-specific factors' related to both the public and private interests" to determine whether transfer is warranted.  *Chariots for Hire*, 918 F. Supp. 2d at 31 (quoting *Stewart Org.*, 487 U.S. at 29).  The private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of

---

[1] Of note, however, is that *DSMC* was decided before amendments to the venue statute. Before 2011, a corporate defendant, if not in a multi-district State, was "deemed to reside in any judicial district in which it is subject to personal jurisdiction *at the time the action is commenced*." 28 U.S.C. §1391(c) (2006) (amended 2011) (emphasis added). The Court in *DSMC* reasoned that because the statute included "at the time the action commenced," the Court had to assess whether personal jurisdiction "was appropriate at the time the plaintiff filed the lawsuit, not as of the time defendant failed to object to personal jurisdiction." 273 F. Supp. 2d at 19. Therefore, the Court found that a defendant corporation could not be deemed to reside in a State for venue purposes solely by failing to object to personal jurisdiction. *Id.*

The Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011), removed the language "at the time the action commenced" from the general, non-multi-district State, corporate residency provision, 28 U.S.C. §1391(c)(2). Given this change in the statute, it appears that defendant corporations in single-district States must contest personal jurisdiction in order to dispute residency under 28 U.S.C. §1391(b)(1). Other district courts in single-district States have come to this same conclusion. *See, e.g., Dakota Provisions, LLC v. Hillshire Brands Co.*, 226 F. Supp. 3d 945, 960 (D.S.D. 2016); *Colombo Candy & Tobacco Wholesale Co. v. Ameristar Casino Council Bluffs, Inc.*, 972 F. Supp. 2d 1103, 1107 (D. Neb. 2013).

forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). The public-interest factors include: (1) the transferee forum's familiarity with the governing laws; (2) the congestion of the transferee court compared to the transferor court; and (3) the local interest in having local controversies decided in the home forum. *Id.*

### i. Convenience and Fairness Favor Transfer to the Eastern District of Virginia

The parties effectively concede that this case could have been brought in the Eastern District of Virginia. *See* M&S Mem. at 1 (requesting transfer to the "Eastern District of Virginia, . . . where venue is proper."); Pl.'s Opp. Mot. Dismiss at 4 (requesting transfer to the Eastern District of Virginia if this Court finds venue inappropriate in the District of Columbia). They dispute only to which division within that judicial district the Court should transfer this case. Both parties reside in the Eastern District of Virginia. Both parties assert that at least some of the events giving rise to this case happened in that district. And it appears that there are no defects in subject matter jurisdiction and personal jurisdiction in the Eastern District of Virginia. Accordingly, the Court agrees that the Eastern District of Virginia is a proper venue for this case.

The Court next considers whether the balancing of the relevant factors counsels in favor of transfer to the Eastern District of Virginia—the forum preferred by the defendant in this matter. Generally, a plaintiff's choice of forum is a "paramount consideration" in determining a transfer request. *Thayer/Patricof Educ. Funding, LLC v. Pryor Res.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (quoting *Sheraton Operating Corp. v. Just Corporate Travel,* 984 F. Supp. 22, 25 (D.D.C. 1997)). That deference is substantially weakened, however, when the action is not brought in the plaintiff's home forum. *See Blackhawk Consulting, LLC v. Fed. Nat'l Mortg.*

*Ass'n*, 975 F. Supp. 2d 57, 61 (D.D.C. 2013) (finding deference given to plaintiff limited liability company's choice of forum weakened because it was organized under the laws of another State and did not maintain any permanent offices in the chosen forum). In addition, the deference owed a plaintiff's chosen forum is lessened even further when the chosen forum has "no meaningful ties to the controversy" and the proposed transferee forum has "substantial ties" to the controversy. *Trout Unlimited*, 944 F. Supp. at 17.

Here, Mr. Aguilar is a resident of Virginia but has chosen the District of Columbia as his choice of forum. By contrast, M&S's chosen forum—the Eastern District of Virginia—is the home forum for Mr. Aguilar. *See* M&S Mem. at 3. Furthermore, although M&S does some business in the District of Columbia, Mr. Aguilar never performed any work for M&S outside of the Eastern District of Virginia, and all decisions about his compensation were made and processed in the Eastern District of Virginia. *See* M&S Mem. at 2–3. Therefore, the controversy over Mr. Aguilar's unpaid overtime compensation has substantial ties to the Eastern District of Virginia—M&S's chosen forum—and has no meaningful ties to the District of Columbia. Accordingly, Mr. Aguilar's chosen forum is entitled to little deference.

In evaluating the next consideration—where the claims arose—courts in this district examine "where most of the significant events giving rise to the claims occurred." *Treppel v. Reason*, 793 F. Supp. 2d 429, 434 (D.D.C. 2011). Here, the only relationship this suit has with the District of Columbia is that M&S does a small portion of its business in the District of Columbia. *See* M&S Mem. at 2. By contrast, as noted above, Mr. Aguilar never performed any work for M&S outside of Eastern District of Virginia, his tasks were assigned by supervisors in the Eastern District of Virginia, and all decisions made about his compensation were made and processed in the Eastern District of Virginia. *See* M&S Mem. at 2–3. Therefore, because the

significant events giving rise to the claim occurred in the Eastern District of Virginia, the third factor weighs heavily in favor of transfer.

The three remaining private-interest factors—the convenience of parties, witnesses, and ease of access to sources of proof—weigh slightly in favor of transfer to the Eastern District of Virginia. Many of the likely witnesses—including Mr. Aguilar's supervisors, who work in the Norfolk office—and records pertaining to Mr. Aguilar's work are located in the Eastern District of Virginia. Indeed, Mr. Aguilar himself lives in the Eastern District of Virginia. And while parts of the Eastern District of Virginia neighbor this judicial district, most sources of proof in this case can be found in Norfolk, Virginia, which is approximately 200 miles from the District of Columbia. *See LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 598 (E.D. Va. 2016) (noting that the Norfolk Division is 200 miles from the District of Columbia metropolitan area). The Court recognizes, though, that the District of Columbia's relative proximity to the Eastern District of Virginia and advances in technology may minimize potential inconveniences to the parties and may reduce the significance of the ease-of-access-to-proof factor. Accordingly, the Court will not give this factor overwhelming weight. *Cf. In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) (en banc) (finding that the 150 miles the witnesses would have to travel from the Northern District of Texas, Dallas Division to the Eastern District of Texas, Marshall Division was a sufficient inconvenience to weigh in favor of transfer).[2]

Turning to the public-interest factors, the Court finds that the first (familiarity with the governing law) and second (congestion of the court) factors are neutral. The transferee forum's

---

[2] Mr. Aguilar's statement that he expects to move to New York prior to the conclusion of this case, *see* Pl.'s Opp. Mot. Dismiss at 4, does not significantly alter the analysis. It is not apparent why, in the event he moves to New York, either of the forums discussed might become more or less convenient than the other.

familiarity with the governing law—here, the Fair Labor Standards Act—is neutral because "where the heart of the case involves violation of federal law, this factor is less significant." *Chariots for Hire*, 918 F. Supp. 2d at 33. This is so because federal courts are all equally familiar with issues of federal law. *See Oceana v. Bureau of Ocean Energy*, 962 F. Supp. 2d 70, 78 (D.D.C. 2013). The second factor is similarly neutral because there is no evidence in the record to support a finding, one way or the other, that transfer would result in a faster or slower resolution of the case. *See Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 34 (D.D.C. 2008) (stating that because the defendant presented no evidence to support a finding that resolution of the case would be faster in one district than another, the congestion factor is neutral); *Shenandoah Assoc. Ltd. P'ship v. Tirana,* 182 F. Supp. 2d 14, 26 (D.D.C. 2001) (finding unpersuasive the argument that one court is more meaningfully congested than the other absent evidence).

The third public-interest factor (the interest in deciding local controversies at home) favors transfer to the Eastern District of Virginia. In evaluating this factor, courts in this jurisdiction look at where the claim arose and where a "clear majority of the operative events took place." *Maysaroh v. Am. Arab Commc'ns & Translation Ctr., LLC*, 51 F. Supp. 3d 88, 97 (D.D.C. 2014) (quoting *Treppel,* 793 F. Supp. at 439–40). As previously discussed, Mr. Aguilar never left the Eastern District of Virginia for his work with M&S, his supervisors and records were all located in the Eastern District of Virginia, and the pay policy decisions were made at M&S headquarters in the Eastern District of Virginia. Therefore, the Eastern District of Virginia has a strong interest in deciding this controversy. In sum, six of the nine private- and public-interest factors weigh in favor of transfer from the District of Columbia to the Eastern District of Virginia.

**ii.     The Norfolk Division is a More Convenient Forum than the Alexandria Division**

The Court next considers to which division within the Eastern District of Virginia it should transfer this action.  Mr. Aguilar proposes that, if this Court finds venue improper or inconvenient in the District of Columbia, it should transfer this case to the Eastern District of Virginia, Alexandria Division.  Pl.'s Opp. Mot. Dismiss. at 4.  M&S, on the other hand, asks the Court to transfer the case to the Eastern District of Virginia, Norfolk Division.  Where, as here, both parties seek to transfer a case, "each party bears the burden of establishing that the relevant factors favor transfer to their chosen district." *Est. of Matthews v. Novartis Pharm. Corp.*, 77 F. Supp. 3d 1, 4 (D.D.C. 2014); *see also Weiner v. Novartis Pharm. Corp.*, 991 F. Supp. 2d 217, 220 (D.D.C. 2013) (assessing plaintiff's transfer request under 28 U.S.C. §1404(a) and noting that the "moving party bears the initial burden of establishing that transfer is proper"); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 12 (D.D.C. 2009) (denying plaintiff's motion to transfer because the plaintiff did not allege facts sufficient to support jurisdiction over the defendant in the transferee forum).

The Court has already thoroughly discussed M&S's arguments and evidence for why Norfolk is a convenient forum for this action.  This claim arose from events that happened in Norfolk, Virginia (which is where all tasks were assigned to Mr. Aguilar and where he performed all of his worked-related duties); the parties, witnesses, and most of the relevant evidence is located in Norfolk, Virginia; and the Norfolk Division has an interest in deciding the case since the claim arose within that division.  M&S has supported its request for transfer to the Norfolk Division.

By contrast, Mr. Aguilar's entire argument in support of transfer to the Alexandria Division is that "the pay policy decision was made in Alexandria, payroll utilized an Alexandria

address and the named Plaintiff is expected to move to New York prior to the conclusion of this case." Pl.'s Opp. Mot. Dismiss at 4. He does not address why these factors are important or whether they outweigh the factors in favor of transfer to the Norfolk Division. *See id.* Moreover, it is unclear how Mr. Aguilar's plans to move to New York weigh in favor of transfer to the Alexandria Division. It appears that the only connection Alexandria has with the case is that M&S headquarters are located there. *See* M&S Mem. at 2. Given the substantial support for M&S's transfer request and the relative lack of support for Mr. Aguilar's, the Court will grant M&S's alterative motion and transfer this case to the Eastern District of Virginia, Norfolk Division.

## V. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to transfer this case to the United States District Court for the Eastern District of Virginia, Norfolk Division pursuant to 28 U.S.C. §1404(a). An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 9, 2017                     RUDOLPH CONTRERAS
                                            United States District Judge